IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHARI I. HOWARD, | § | |
| Plaintiff, | § § § | |
| v. | § § | 1:16-cv-1279-RP |
| LOWE'S HOME CENTERS, LLC, | § § § | |
| Defendant. | § § | |

**ORDER**

Before the Court is Defendant Lowe's Home Centers, LLC's ("Lowe's") Motion for Summary Judgment, (Dkt. 48), and Plaintiff Shari Howard's ("Howard") response, (Dkt. 58). Having considered the parties' arguments, the factual record, and the relevant law, the Court finds that Lowe's motion should be granted.

**I. BACKGROUND**

Howard, representing herself,[1] is suing Lowe's to recover damages arising out of two separate disputes: (1) a broken Whirlpool refrigerator and (2) the denial of a prepaid-account discount. The former dispute began when Howard bought a "GE Whirlpool" refrigerator from Lowe's in August 2014. (Am. Compl., Dkt. 25, at 3). According to Howard, Lowe's sold, delivered, and installed a defective fridge; its freezer compartment produced excessive "ice and frost" that spoiled the food inside. (*Id.*). Howard then called Lowe's on December 5, 2014, to ask them to repair the fridge. (*Id.*). They sent a repairperson to Howard's home on January 5, 2015, but he or she could not fix the unit. (*Id.* at 3–4). According to Howard, Lowe's employees made twelve separate visits to her house to try to fix the fridge, but the fridge continued to malfunction despite the company's considerable efforts. (*Id.* at 4). Howard then filed this action against Lowe's, alleging that

---

[1] Howard was a practicing attorney licensed in Arizona from the early 1980s until 1995. (Howard Dep., Dkt. 59, at 19:15–29:14).

the broken fridge caused a variety of personal injuries and property damage: Howard lost money on spoiled food; her replacement cooler leaked water, damaging personal property; an unspecified event involving the fridge caused a shoulder injury that limited her ability to work; her elderly mother fell near the fridge and injured her head; and that Howard experienced mental anguish related to these injuries and losses. (*Id.* at 4–5).

Out of the broken fridge arise a number of causes of action. Howard asserts claims for: (1) statutory and common-law products liability, (*id.* at 5–6, 8); (2) violations of seller's warranties contained in the Texas Business and Commerce Code and the common law, such as the implied warranty of merchantability, (*id.* at 6–7, 9); (3) common-law fraudulent misrepresentation, (*id.* at 7–8); common-law fraud, (*id.* at 11); (4) breach of contract, (*id.* at 12); (5) negligent inspection, advertising, and repair, (*id.* at 12-13); (6) false advertising violations of the Lanham Act, 15 U.S.C. § 1125(a), (*id.* at 13); (7) violations of the Sherman Act's prohibition against restraints of trade, 15 U.S.C. §§ 1–7, (*id.* at 13); and (8) violations of the Texas Deceptive Trade Practices Act ("DTPA"), (*id.* at 14-15).

The second dispute concerns Lowe's alleged failure to give Howard a five percent discount on a number of purchases made from a prepaid account. (*Id.* at 15-17). Howard says that she entered into a prepayment program in which she would deposit money into a Lowe's account and then receive a five percent discount on purchases made with account funds. (*Id.* at 15). According to Howard, Lowe's applied the discount to several purchases but not to a number of others. (*Id.* at 16). She alleges damages stemming not only from being overcharged but also from costs associated with the time that she had to spend arguing with Lowe's employees about the discount. (*Id.* at 16–17).

From these facts, Howard asserts claims for (1) common-law conversion, (*id.* at 17–18); (2) "illegal banking," (*id.* at 17–18); and (3) violations of the Sherman Act, 15 U.S.C. §§ 1–7, (*id.* at 19–

2

20). For relief, Howard asks not only for damages but also for an injunction requiring Lowe's to give her a perpetual five percent discount on all of her Lowe's purchases. (*Id.* at 17).

Lowe's filed a motion for summary judgment seeking judgment on all of Howard's claims, (Mot. Summ. J., Dkt. 48), and Howard filed a response. (Resp. Mot. Summ. J., Dkt. 58).

## II. LEGAL STANDARD

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party may [also] meet its burden by simply pointing to an absence of evidence to support the nonmoving party's case." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 544 (5th Cir. 2005). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000). The court must view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993) (citation and quotation marks omitted). That said, a party "may not rest upon mere allegations or denials in its pleadings,

but must set forth specific facts showing the existence of a genuine issue for trial." *Id.* (citing *Anderson*, 477 U.S. at 256–57).

## III. DISCUSSION

*A. Refrigerator Claims*

<u>1. State-law claims</u>

For all of Howard's state-law claims related to the defective refrigerator, Lowe's asserts that it is entitled to summary judgment under Section 82.003 of the Texas Civil Practice and Remedies Code ("Section 82.003"). (Mot. Summ. J., Dkt. 48, at 4–6). Section 82.003 provides that for products-liability claims, "[a] seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves" one of seven exceptions. Tex. Civ. Prac. & Rem. Code § 82.003(a). The statute defines products liability claims according to the substance of the claim, not the form:

> "Products liability action" means any action against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories.

Tex. Civ. Prac. & Rem. Code § 82.001(2). In other words, whether Section 82.003 applies to a particular claim depends not on whether the plaintiff labeled it as a products-liability claim, but rather on whether liability arises out of personal injuries or property damage caused by a defective product. *See Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999) ("Liability for personal injuries caused by a product's defective design can be imposed under several legal theories, among them negligence, breach of warranty, and strict products liability."). Thus, for example, the Fifth Circuit has applied a different provision of Chapter 82[2] to "claims of fraud,

---

[2] Chapter 82 of the Texas Civil Practice and Remedies Code, titled "Products Liability," was enacted to address "disparate products liability issues" by statute. *Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999). Because the definition of "products liability action" applies throughout Chapter 82, the Fifth Circuit's interpretation of the term in the context of one provision is relevant to its meaning in the context of another.

4

conspiracy, and DTPA violation" because the "action ar[ose] out of [the plaintiff's] allegedly wrongful death." *Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999).

One tool Texas appellate courts use to determine whether Section 82.003 applies to a particular cause of action is the economic loss rule. *Lopez v. Huron*, 490 S.W.3d 517, 521 (Tex. App.—San Antonio 2016, no pet.) In *Lopez*, the plaintiff brought a claim for breach of implied warranty of merchantability against a company that sold it defective plastic bags. *Id.* at 519. Acknowledging that a claim for breach of implied warranty "can be either a contract or tort claim," the court looked to the plaintiff's damages: "When the damages are purely economic, the claim sounds in contract. . . . But a breach of implied warranty claim alleging damages for death or personal injury sounds in tort." *Id.* at 521–22 (citing *JCW Electronics, Inc. v. Garza*, 257 S.W.3d 701, 704–05 (Tex. 2008)). Ultimately, because the *Lopez* plaintiff's damages "were [only] for economic loss relating to the final product," the court determined that the plaintiff's breach of implied warranty claim was not a products liability action for the purposes of Section 82.003. *Id.* at 524–25; *see also Mills v. Warner-Lambert Co.*, 581 F. Supp. 2d 772, 792–93 (E.D. Tex. 2008) (holding that the plaintiff's "claims under the UCC and the DTPA for breach of the implied warranty of merchantability [were] not products liability actions under Texas law" because the plaintiff alleged "purely economic damages").

Here, the Court finds that Section 82.003 applies to Howard's refrigerator-related state-law claims against Lowe's. Howard's damages arise either out of personal injuries or property damage. Howard alleges that the defective unit cost her thousands of dollars in lost food. (Am. Compl., Dkt. 25, at 4). Howard alleges that she was forced to buy a leaky replacement cooler, which damaged her home and furniture. (*Id.*). She alleges that the refrigerator dislocated her shoulder three times, (*id.* at 5; Howard Dep., Dkt 59, at 91:25–92:4), and that the unit caused "permanent disability to [her] elderly parent" by causing her mother to fall and injure herself. (Am. Compl., Dkt. 25, at 5). The lost

5

food and the dislocated shoulder have allegedly cost Howard "lost profits in [her] construction project and writing projects . . . physical injury and permanent disability to [herself] . . . physical pain and suffering, mental anguish, and emotional distress." (*Id.* at 5). Even the injuries resulting from Lowe's alleged breach of contract are described in terms of personal injury: Howard says Lowe's breach "caus[ed] all of [her] and her mother[']s resultant physical injuries, their permanent disabilities, and their pain and suffering." (*Id.* at 12). Although Howard makes some reference to economic damages, she is far from alleging "purely economic" damages. *Lopez*, 490 S.W.3d at 522. Fundamentally, each of her claims arises out of personal injuries and property damage caused by the defective refrigerator. Although she has different theories of liability—that Lowe's warranted that the fridge was of high quality, inducing her to buy it, or that Lowe's negligently advertised the fridge, inducing her to buy it—she is ultimately alleging that Lowe's sold her a defective product, which injured her and cost her money. Her state-law claims, therefore, "sound in tort," *id.*, and are subject to Section 82.003 even if they are not all characterized as products liability claims. *Sanchez*, 187 F.3d at 491. There is no dispute that Lowe's is a seller for the purposes of Section 82.003, nor is there any dispute that Lowe's did not manufacture the refrigerator. Accordingly, Lowe's is not liable for harm caused to Howard unless she can prove that one of several exceptions apply. Tex. Civ. Prac. & Rem. Code § 82.003(a). Because Howard does in fact argue that Lowe's conduct implicates one or more of the exceptions to Section 82.003, (Resp. Mot. Summ. J., Dkt. 58, at 7–9), the Court will now turn to consider the applicability of those exceptions.

### *(a) Statutory Exceptions to Section 82.003*

Section 82.003 contains seven exceptions that subject a nonmanufacturing seller to liability when the seller's conduct caused the plaintiff's harm. Tex. Civ. Prac. & Rem. Code § 82.003(a)(1)–(7). Lowe's asserts that none of the exceptions apply. (Mot. Summ. J., Dkt. 48, at 6–9). Howard

responds that Sections 82.003(a)(2), (3), (5), and (6) apply. (Resp. Mot. Summ. J., Dkt. 58, at 7–9). For the reasons discussed below, the Court finds that none of the exceptions apply in this case.

Section 82.003(a)(2) applies when "the seller altered or modified the product and the claimant's harm resulted from that alteration or modification." Tex. Civ. Prac. & Rem. Code § 82.003(a)(2). Howard states that "any of Lowe's handling [of the product] *could have made* the malfunctions exist." (Resp. Mot. Summ. J., Dkt. 58, at 8) (emphasis added). Howard's conjectural phrasing underscores the fact that she cannot trace the refrigerator's defects to any alteration or modification made by Lowe's.[3] Howard speculates that the refrigerator's malfunction "could only have been caused" while the unit was in Lowe's possession or control, (Am. Compl., Dkt. 25, at 5), ignoring the possibility that it was defective when Whirlpool delivered it to Lowe's. Indeed, Lowe's denies that it altered or modified the unit. (English Aff., Dkt. 48-1). Not only does Howard have no evidence that Lowe's altered or modified the unit, she does even allege that it did so. Accordingly, there is no material factual dispute about whether Section 82.003(a)(2) applies.

Section 82.003(a)(3) applies when "the seller installed the product, or had the product installed, on another product and the claimant's harm resulted from the product's installation onto the assembled product." Tex. Civ. Prac. & Rem. Code § 82.003(a)(3). Howard states only that Lowe's installed the refrigerator, (Resp. Mot. Summ. J., Dkt. 58, at 8), but she does not allege— much less offer evidence—that Lowe's installed the refrigerator *onto another product*. Howard has therefore failed to create a material factual dispute about whether Section 82.003(a)(3) applies.

Section 82.003(a)(5) applies when "(A) the seller made an express factual representation about an aspect of the product; (B) the representation was incorrect; (C) the claimant relied on the representation in obtaining or using the product; and (D) if the aspect of the product had been as represented, the claimant would not have been harmed by the product or would not have suffered

---
[3] In fact, Howard admits that she does not have any evidence that Lowe's altered or modified the refrigerator. (Howard Dep., Dkt. 59, at 131:7–18).

7

the same degree of harm." Tex. Civ. Prac. & Rem. Code § 82.003(a)(5). Howard alleges that Lowe's made "express, specific" representations that "(1) [the fridge] was new, (b) [its] refrigerator and freezer sections both worked normally for normal performance, (c) that they worked as new, [and] (d) that they had product design and performance capability such as to make it a reasonable choice for Plaintiff's household use." (Am. Compl., Dkt. 25, at 7).[4]

Courts interpreting Section 82.003(a)(5) have declined to apply that exception when the seller's representation was simply a general positive statement about the product. *See, e.g.*, *Gill v. Michelin N. Am., Inc.*, 3 F. Supp. 3d 579, 585 (W.D. Tex. 2013) (holding that Section 82.003(a)(5) did not apply where the plaintiff "merely allege[d] that [the seller] represented that the Dodge Ram pickup at issue—and thus its component tire—was a 'good truck' (i.e. that the product was safe)."). By contrast, courts applying Section 82.003(a)(5) in plaintiffs' favor tend to do so only when the seller made a specific representation about a product's capabilities or quality. *See, e.g.*, *JSC Nizhnedneprovsky Tube Rolling Plant v. United Res., LP*, No. 13-15-00151-CV, 2016 WL 8921926, at *9 (Tex. App.—Corpus Christi Dec. 21, 2016, no pet.) (applying Section 82.003(a)(5) where a seller represented that a pipe was of a specific grade); *Helm v. Moog Inc.*, No. 4:11-CV-109-Y, 2011 WL 3176439, at *4 (N.D. Tex. July 27, 2011) (applying Section 82.003(a)(5) where a seller represented that a pain pump was safe for use delivering medication to a patient's shoulder).

This Court therefore interprets Section 82.003(a)(5) to exclude generic positive statements about a product, such as statements that the product is "good" or "safe." First, the statute's text limits its application to representations about "an *aspect* of the product" rather than to statements about the product in general. Tex. Civ. Prac. & Rem. Code § 82.003(a)(5) (emphasis added). Second, applying the exception to generic statements would significantly undermine the statute's purpose of

---

[4] Howard also says that she "relied on Lowe's large national position and its claims that it was a legitimate, law-abiding seller of quality household appliances and extra protection plans guaranteeing extended warranty of repair or replace." (Resp. Mot. Summ. J., Dkt. 58, at 8). Lowe's reputation and its general claims about its business practices are not representations about a specific product and thus do not trigger the application of Section 82.003(a)(5).

8

insulating nonmanufacturing sellers from liability. If a seller were to become liable simply for telling a customer that a refrigerator is a new unit that works normally, Section 82.003 could be sidestepped on the basis of even the most routine customer service conversations. Here, Howard alleges that a Lowe's employee told her the fridge "was new," that it "worked normally for normal performance," that it "worked as new," and that it would "make it a reasonable choice" for household use. (Am. Compl., Dkt. 25, at 7). These are the same sorts of "general representations" that another court in this district has rejected. *Gill*, 3 F. Supp. 3d at 584–85. Like that court, this Court declines to interpret Section 82.003(a)(5)'s exception so broadly as to cast aside Section 82.003's liability shield on the basis of generic statements about a product. Accordingly, none of the alleged representations made by Lowe's to Howard suffice to create a material factual dispute about whether Section 82.003(a)(5) applies.

Finally, Section 82.003(a)(6) applies when the seller "actually knew of a defect to the product at the time the seller supplied the product[,] and . . . the claimant's harm resulted from the defect." Tex. Civ. Prac. & Rem. Code § 82.003(a)(6). Howard's argument is that Lowe's had to know this specific unit was defective because Whirlpool had previously been sued regarding other unspecified defects of different units of the same model, and that Lowe's and Whirlpool are so intertwined that Lowe's must have known about the other defective units. (Resp. Mot. Summ. J., Dkt. 58, at 9–10). Even if Howard had submitted evidence to substantiate this claim, it would be insufficient to establish actual knowledge under Section 82.003(a)(6). If supported, Howard's argument would establish, at most, that Lowe's was aware of a risk that the particular unit sold to Howard might be defective. Federal courts in this circuit routinely hold that should-have-known allegations fall short of Section 82.003(a)(6)'s actual-knowledge requirement. *See Evans v. Kawaski Motors Corp., USA*, No. CIV.A. H-15-659, 2015 WL 4434073, at *4–7 (S.D. Tex. July 17, 2015) (holding that an allegation of gross negligence—that the seller knew of a risk—did not constitute an allegation of actual

9

knowledge for the purposes of Section 82.003(a)(6)); *Patton v. Nike, Inc.*, No. 4:14-CV-631, 2015 WL 1546246, at *3 (E.D. Tex. Apr. 7, 2015) ("Under [Section 82.003(a)(6)], however, liability cannot be based on an allegation that a seller *should have known* of a defect in a product.") (emphasis in original) (citation and quotation marks omitted); *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 881 (W.D. Tex. 2010) (rejecting the argument that complaints from other customers and lawsuits about other units of a product "equate to 'actual knowledge' of a 'defect' under [Section] 82.003(a)(6)"). Howard's allegations about other lawsuits and customer complaints do not establish that Lowe's had actual knowledge of a defect to the specific unit she purchased. She has therefore failed to create a material factual dispute about whether Section 82.003(a)(6) applies.

The Court finds that Lowe's is a nonmanufacturing seller for the purposes of Section 82.003 and that all of Howard's state-law claims are products-liability actions under the statute. The Court further finds that there is no material factual dispute about whether any Section 82.003(a) exception applies to Howard's state-law claims. These findings entitle Lowe's to judgment as a matter of law on Howard's state-law claims relating to her defective refrigerator. The Court therefore holds that Lowe's is entitled to summary judgment on all such state-law claims.

### 2. Federal law claims

In addition to bringing state-law claims for her refrigerator-related injuries, Howard also claims that Lowe's violated the Lanham Act, 15 U.S.C. § 1125(a), by its "misrepresentations in its television, print, and store advertising." (Am. Compl., Dkt. 25, at 13). To make out a prima facie case for false advertising under 15 U.S.C. § 1125(a), a plaintiff must establish that: "(1) [a] false or misleading statement of fact about a product [was made]; (2) [s]uch statement either deceived, or had the capacity to deceive[,] a substantial segment of potential consumers; (3) [t]he deception is material, in that it is likely to influence the consumer's purchasing decision; (4) [t]he product is in interstate commerce; and (5) [t]he plaintiff has been or is likely to be injured as a result of the

statement at issue." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). Howard has failed even to identify an advertisement she believes to be false,[5] much less provided evidence to establish the other elements of a false advertising claim. Howard's vague references throughout her complaint to advertisements that induced her to buy the refrigerator do not suffice as evidence of a false or misleading statement. Howard has thus failed to create a material factual dispute regarding her Lanham Act claim, entitling Lowe's to summary judgment on that claim.

Howard's Sherman Act claim is similarly meritless. (Am. Compl., Dkt. 25, at 13, 19 (citing 15 U.S.C. §§ 1–7)).[6] Howard's claim is based on an unidentified agreement between Whirlpool and Lowe's. (*See id.* at 19 (referring to Lowe's "agreement with the manufacturer to ignore the replacement requirements of all warranty cases"); Resp. Mot. Summ. J., Dkt. 58, at 13 (referring to a "secret Agreement" between Lowe's and Whirlpool)). Howard's deposition testimony suggests that she is referring to the Master Standard Buying Agreement ("MSBA") between Lowe's and Whirlpool. (Howard Dep., Dkt. 59, at 62:15–66:15). The MSBA is a commercial contract between Whirlpool and Lowe's that governs general matters such as liability for goods in shipment, invoicing, and warranties. (Agreement, Dkt. 32-1). Although the MSBA is a contract between two parties, "[n]ot every instance of cooperation between two people is a potential contract, combination . . . or conspiracy, in restraint of trade." *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189–90 (2010) (citation and quotation marks omitted). An antitrust plaintiff must "demonstrate that a particular contract or combination is in fact unreasonable and anticompetitive before it will be found unlawful." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006). Howard has offered no evidence that the MSBA is anticompetitive, nor has she identified any other agreement that might be an illegal

---

[5] In her deposition, Howard was unable to identify a specific advertisement that made a false or misleading statement about a particular product. (Howard Dep., Dkt. 59, at 66:21–70:2).

[6] Howard presumably means to refer only to 15 U.S.C. § 1, which pertains to concerted action. *See Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984) ("The Sherman Act contains a basic distinction between concerted and independent action. . . . Section 1 of the Sherman Act, in contrast [to Section 2], reaches unreasonable restraints of trade effected by a contract, combination . . . or conspiracy between separate entities. It does not reach conduct that is wholly unilateral.") (citations and quotation marks omitted).

restraint of trade. Because Howard has failed to create a material factual dispute regarding her Sherman Act claim, Lowe's is entitled to summary judgment on this claim, as well.

*B. Discount Claims*

Howard claims that Lowe's failure to give her a five percent discount on a number of purchases constitutes conversion. (Am. Compl., Dkt. 25, at 16 ("[O]n [78] occasions . . . Lowe's refused to apply [my] cash for the contracted-for 5 [percent] discount.")). Howard also claims that Lowe's is liable for conversion because Lowe's "stole . . . all/part of each deposit" made into her prepaid account. (*Id.*). To prove a conversion claim under Texas law, a plaintiff must prove that: "(1) [s]he legally possessed the property or was entitled to it; (2) the defendant wrongfully exercised dominion and control over the property, excluding the plaintiff; (3) the plaintiff demanded the property's return; and (4) the defendant refused." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009). Howard has failed to establish a viable conversion claim on either theory.

With respect to the discount allegations, Howard does not state a claim for conversion. She identifies no property that she possessed or to which she was legally entitled. Instead, she simply alleges that she paid more for Lowe's products than she should have. Because Howard does not—and cannot—identify property to which she was entitled, she fails to state a claim for conversion regarding the denied discount, and Lowe's is entitled to summary judgment on that claim.

With respect to Howard's claims of theft, there is no evidence beyond her bare allegations that Lowe's has stolen her money. For example, Howard states that Lowe's "stole [her] cash from her $5,000 account with them." (Resp. Mot. Summ. J., Dkt. 58, at 14). In her deposition, Howard refers vaguely to "Lowe's stealing cash from my prepaid cash account," (Howard dep., Dkt. 59, at 62:8–9), and to "the other moneys [Lowe's] stole from me," (*id.* at 125:1), but does not identify the date that a theft took place or the amount stolen. Howard offers no evidence to support her

unspecified allegations. She cannot rest her conversion claim "upon mere allegations . . . but must set forth specific facts showing the existence of a genuine issue for trial." *Rosado v. Deters*, 5 F.3d at 123. She has not done so, and Lowe's is therefore entitled to summary judgment on her conversion claims.

Finally, Howard claims that Lowe's prepaid account constitutes "illegal banking", (*id.* at 17–18), but cites no law that provides her with a cause of action, and the Court can find none. Lowe's is therefore entitled to summary judgment on that claim, as well.

## IV. CONCLUSION

For these reasons, Lowe's Motion for Summary Judgment, (Dkt. 48), is **GRANTED**. The trial set for February 5, 2018, is **VACATED**. Lowe's Motions in Limine, (Dkt. 53), are **DENIED AS MOOT**.

**SIGNED** on January 26, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE